[ PHILADELPHIA, FEBRUARY 15TH, 1840. ]

FLANAGIN *against* WETHERILL and Others.

IN ERROR.

1. An assignment was made in 1835, by A. & B. of all their estate and effects, for the benefit of certain creditors who should release, &c. This assignment was duly recorded. There being a surplus in the hands of the assignee after paying the releasing creditors, A. & B. executed two instruments under seal, in March 1836, by one of which they assigned the surplus to the same assignee, in trust to pay the same to certain creditors who had signed a letter of license, and by the other of which they also assigned the surplus to the same assignee, in trust to pay the same to such creditors as should release within a certain time. *Held*, that these instruments came within the provisions of the act of 1818, and ought to have been recorded in conformity with that act ; and not having been recorded, that the fund was liable, in the hands of the assignee, to an attachment at the suit of a creditor who had not released.

2. In a scire facias against a garnishee, after a judgment in foreign attachment, the plaintiff is entitled to recover the amount of the judgment with interest, although the first judgment includes interest.

3. On the issue of nulla bona, in a scire facias against a garnishee, the jury found for the plaintiff, and assessed the damages at a certain sum, being the amount of a judgment in the attachment with the interest. The property in the garnishee's hands, was money. *Held*, that though the jury ought to have found what property was in the hands of the garnishee, yet the defect was merely in form, and this Court, on error, would not reverse on this account, but would consider the verdict and judgment as amended by the Court below.

ERROR to the District Court for the City and County of Philadelphia.

John P. Wetherill, Charles Wetherill and William Wetherill, copartners, &c. brought a writ of foreign attachment in an action on the case in that Court, to September term, 1836, against Jacob Snider, and Charles W. Roberts, lately copartners under the firm of Snider & Roberts. The attachment issued, and was served on the 11th of June, 1836. Judgment was duly entered at the third term, and the damages assessed at $1016 42.

A *scire facias* was then issued against John Flanagin, garnishee

(Flanagin *v.* Wetherill.)

of Snider & Roberts. Interrogatories were filed to which the defendant answered; and upon the answers and exhibits annexed thereto the following facts appeared.

On the 1st of April, 1835, Snider & Roberts executed an assignment to John Flanagin of all their estate and effects whatsoever, in trust to sell and dispose of the same, and after paying the expenses of the trust, &c. to pay the creditors of the assignees in a certain order and in certain specified classes: the first and second classes contained certain creditors by name; and the third class, "all the residue of the creditors indiscriminately:" Provided, that none of the creditors of the second and third classes should be entitled to any portion of the estate and effects so assigned, who should not execute a release to the said Snider & Roberts, of all demands, at or before 12 o'clock, noon, of the first of May, 1835.

This assignment was duly recorded on the 9th of April, 1835.

The release required by the assignment was executed by several of the creditors.

On the      of March, 1836, Jacob Snider and Charles W. Roberts executed the following instrument.

"Whereas, after paying the creditors entitled to payment under our assignment of the 1st of April, 1835, to John Flanagin, a balance will remain in his hands for our use; and whereas certain of our creditors who omitted to entitle themselves to payment under it, by executing the release therein provided for, have since agreed to forbear suits for twelve months from the 12th day of June, 1835, and others have forborne to sue without entering into the letter of license, and we are desirous to appropriate the said balance in the hands of our assignee to the payment of the said forbearing creditors : now in consideration thereof, we do hereby assign our interest in the said balance unto the said John Flanagin ; in trust, nevertheless (after deducting his commissions, and all other charges attending the execution of this trust,) to pay the same as far as it may extend, without preference, amongst those creditors who have signed the letter of license dated the 12th of June, 1835, now in the possession of the said John Flanagin, as well as amongst all our remaining creditors, who have forborne to proceed against us at law'; our object being an equal and equitable distribution of our effects amongst those to whom we are indebted.

In witness whereof, we have hereunto set our hands and seals this      day of March, A. D. 1836.

J. Snider,                [L. s.]
Charles W. Roberts.       [L. s.]"

On the 19th of March, 1836, the following instrument was executed by Snider & Roberts.

(Flanagin *v.* Wetherill.)

" Know all men by these presents, that we, Jacob Snider and Charles W. Roberts, late co-partners in trade in the city of Philadelphia, under the firm of Snider & Roberts, in consideration of the sum of one dollar, lawful money of the United States, to us in hand paid, at and before the sealing and delivery hereof, the receipt whereof is hereby acknowledged, as well as for divers other good causes and valuable considerations us thereunto moving, have remised, released, assigned and set over, and by these presents do remise, release, assign and set over, unto John Flanagin of the said city, all our and each of our right, title and interest, claim, property and demand whatsoever, of, in and to all such sum and sums of money, rights, credits, effects, and property whatsoever, which now are, or hereafter may be remaining in the hands or possession of the said John Flanagin, as our assignee, under a general assignment dated April 1, 1835, after payment of all such of our creditors as are or may be entitled to payment under it ; to have and to hold the same unto him, the said John Flanagin, his executors, administrators and assigns, forever ; upon trust, however, (after deducting his commissions, and all other charges attending the execution of this trust,) to pay the same without preference, to and amongst all our copartnership creditors, in proportion to their respective claims. Provided, however, that none of such creditors shall be entitled to participate in the said residuary estate, money and effects, who shall not, at or before twelve o'clock at noon, of the 19th day of September, A. D. 1836, execute a full and entire release and discharge of all demands, to us, the said Jacob Snider and Charles W. Roberts, and who in the meanwhile shall not forbear to molest or disturb us by suits, attachments, or other legal process : and for the more perfect accomplishment of said purpose, we direct that no distribution of any part of said residuum shall be made by the said John Flanagin, until the date last mentioned: and we hereby fully empower the said John, as our attorney in the premises, to collect all sums due, or which may be hereafter due to us, out of said assigned estate, and to reduce all the other property into possession, and generally to do all such lawful acts as we might do herein were we personally present; and if, after paying the creditors entitled to payment under this appropriation, any balance should remain in his hands, then he is to pay the same to the said Snider & Roberts.

Witness our hands and seals, this 19th day of March, A. D. 1836.

J. Snider.          [L. s.]
Charles W. Roberts.          [L. s.]"

Several of the creditors of Snider & Roberts, executed releases in pursuance of this assignment.

To the interrogatories propounded to him respecting the funds in his hands, the defendant made answers as follows : .

(Flanagin v. Wetherill.)

To the third interrogatory. "The said co-partners, Snider & Roberts, executed to me an assignment of their estate, on the 1st day of April, 1835, in trust for the benefit of creditors, upon certain conditions therein stated. The gross amount of property that passed under it, and came into my hands, was, to the best of my knowledge, and judging from my accounts which I believe to be correct, twenty thousand three hundred and eighty-five dollars eighty-four cents. Some doubtful debts remain uncollected, which it is impossible for me to estimate."

To the fourth interrogatory. "The said Snider & Roberts executed to me two written appropriations of the balance which might remain in my hands, after paying the creditors entitled to payment under the said general assignment; copies of which appropriations are hereto annexed, respectively marked A and B, and which I request to be considered as parts of my answer hereto. I cannot state the whole amount and value of the property and effects thus appropriated, as they consisted of book debts of a very doubtful character; but the amount actually received by me therefrom, and remaining, after paying the creditors under the said general assignment, is three thousand one hundred and sixty-nine dollars thirty-four cents, without deducting commissions or expenses. The claims of the creditors to whom this balance is appropriated, amount to about seven thousand dollars. No inventory or appraisement of the effects last mentioned, was made or filed under the said writings or appropriations."

In answer to the fifth and sixth interrogatories, the defendant stated, that he did not give any security as assignee under the second assignment; and that neither of the papers executed in March, 1836, was recorded in the office for recording deeds, &c. for the city and county of Philadelphia.

To the seventh interrogatory he answered: "Releases were executed by certain of the creditors of Snider & Roberts, under the requisition of one of the said appropriations, upon the dates and times therein stated, and by the persons whose names are set forth in the copies thereof hereto annexed, and marked C and D: they were creditors for various amounts; the aggregate being much more than sufficient to absorb all the balance thus appropriated to them by Snider & Roberts."

To the eighth interrogatory he answered, that he was not indebted to Snider & Roberts on the 11th of June, 1836, and had not since been indebted to them.

The defendant pleaded " nulla bona" to the scire facias; and the cause came on for trial before STROUD, J. when the plaintiff's counsel gave in evidence the general assignment of Snider &

(Flanagin *v.* Wetherill.)

Roberts, the record of the proceeding in the foreign attachment, and the answers of the defendants to the interrogatories.

It was admitted that the defendant had finally settled his accounts under the general assignment of Snider & Roberts, and had paid all the creditors claiming under it in full ; and that the plaintiffs and the other remaining creditors of Snider & Roberts had been duly notified by the defendant of the appropriation of the balance of moneys in his hands, prior to the 19th of September, 1836.

The counsel for the defendant then requested the Court to charge the jury that the verdict should be for the defendant, upon the issue of *nulla bona.*

The counsel for the plaintiffs thereupon requested the Court to charge in their favour upon the evidence ; which the Court accordingly did, reserving the points embraced in it for the opinion of the Court in bank.

The charge of the Court was in substance as follows.

" Snyder & Roberts made a general assignment to the defendant, on the 1st of April, 1835, in trust for the benefit of creditors, and stipulating for a release.   Under it the defendant paid all the releasing creditors.   Several creditors having omitted to release, Snyder & Roberts assigned or appropriated the residuum in the defendant's hands, and which belonged to them, for the purpose of paying the remaining creditors, as far as it would reach.   Snyder & Roberts for this purpose executed to the defendant two papers, which are, in effect, the same.   They were not placed upon record, in accordance with the recording act of 1818, and were therefore invalid, as against this attachment.   The plaintiffs are entitled to your verdict for the whole amount of their claim, to wit, the amount found by the inquest in the foreign attachment suit, with interest on the amount so found, from the date of such finding."

The defendant's counsel here objected, that the original defendants would be thereby charged with compound interest, viz. interest on the original claim to the date of the inquest, and interest thereafter on the debt and interest so found.

The learned judge however instructed the jury to find for the plaintiff, conformably to his previous charge ; and the counsel for the defendant then excepted to the whole of the charge.

The jury thereupon found for the plaintiffs, according to the directions of the Court, and assessed the damages at $1093 62 with costs.

A motion was made for a new trial, but the Court in bank refused

(Flanagin *v.* Wetherill.)

the motion, and on the 18th of December, 1838, ordered judgment to be entered on the verdict.

This writ of error was then taken and the following errors were assigned.

" First. The Court below erred in charging the jury: 1st, That the appropriations made by Snider & Roberts of their funds remaining in the defendant's hands, after having discharged his trust as assignee, were void as against the plaintiffs below, for want of being recorded; and that, upon the evidence, the verdict should be for the plaintiffs. 2d. That the plaintiffs were entitled to recover interest on the debt and interest found by the jury of inquiry, from the date of said finding, although by this computation, they would receive compound interest.

Second. The verdict is erroneous in this; that it is for a sum certain, as damages; whereas the jury should have found what goods or effects, if any, were in the hands of the garnishee at the time the attachment was executed, or afterwards; and also the value thereof."

Mr. *Haly*, for the plaintiff in error.

1. This was not such an assignment as was contemplated by the act of 1818. It was a mere order upon the person who held funds to pay them over to certain other persons. There is no case which has gone so far as to say that such a paper must be recorded. The plaintiffs have had notice by the recording of the first assignment. The circumstances of this case resemble those of *Sharpless* v. *Welsh*, (4 *Dall*. 279,) in which the appropriation was sustained against the attachment of a creditor. Here the rights of the creditor for whom the appropriation was made could not be affected by the failure to record the instrument, if recording was necessary.

2. The effect of the judge's direction was to give compound interest to the plaintiff; which has never been allowed except in the case of a *scire facias* to revive a judgment.

3. The issue here was on the plea of *nulla bona*. The jury must find specific goods in the hands of the garnishee or else find for him. There are no damages in the case. It is true that the garnishee admitted money to be in his hands, but the jury should have found the fact of his having money, and not found damages.

Mr. *Henderson*, contra.

1. The attachment was laid on the 11th of June, 1836. The office of the first assignment was then satisfied; and the second assignment was like all other instruments of that kind, intended for the benefit of particular creditors, and within the intent of the act of 1818. The surplus, after paying the creditors under the first assignment, was the property of Snider & Roberts, and as such

liable to an attachment at the suit of the unpaid creditors. The act of 1818 is express, that assignments not recorded shall be void. The money assigned therefore did not vest in the creditors preferred in that assignment.

2d. The verdict is right; because the amount of the judgment in the attachment forms a new debt, upon which interest must be calculated. If there be an excess, it may be remitted.

3d. The record shows that the garnishee had nothing but money in his hands. This exception was not taken in the Court below; and this Court will presume that the jury meant to find that there was so much money in the hands of the defendant, who admitted by his answers that he had upwards of three thousand dollars in his hands.  *Crawford* v. *Barry,* (1 *Binn.* 481.)

The opinion of the Court was delivered by

SERGEANT, J.—In *Englebert* v. *Blaujot,* (2 *Wharton,* 240,) there was an assignment of certain specified property, in trust to pay the assignee and three other creditors, and afterwards to return the surplus to the assignor. It was held, that an assignment in trust for the use of creditors, is within the act of the 24th of March, 1818, though they are fewer than the whole number. That case was much stronger than this, where one instrument provides for a certain class comprising, for aught we know, the whole then existing : and the other instrument is in trust for all creditors who shall release. It is sufficient that it is for creditors, to bring it within the reasons for the passage of the act of the 24th of March, 1818.

2. Interest follows the judgment against the defendant. Such judgment in a foreign attachment, it is true, is not conclusive to every purpose; but as to the property attached and ultimately made liable, it is conclusive as a proceeding *in rem :* and the *scire facias* and execution go for the whole amount due on the judgment, including interest upon it.

3. The verdict is not correct in form. The issue on *nulla bona* is, whether the garnishee had goods and effects of the defendant in his hands or not : and the verdict should respond to it. The 58th section of the act of 13th June, 1836, directs that the jury shall find what goods and effects, if any, were in the hands of the garnishee at the time the attachment was executed or afterwards, and the value thereof. But this is a mere defect of form. The property in the garnishee's hands was money, and the Court might have moulded the verdict into shape after it was rendered. We are bound to consider it as so amended, rather than reverse the judgment contrary to the merits of the case. No request was made by the garnishee to the Court to instruct the jury to find the verdict in due form. If that had been done, and the instruction had been refused, or erroneously given, it might be error. No injury can result from

(Flanagin v. Wetherill.)

the verdict if it is substantially a proper finding. In *Strohecker* v. *Drinkle*, (16 *Serg. & Rawle*, 38,) a general verdict for the plaintiff on the pleas of *non assumpsit, plene administravit*, and debts of a higher nature, was held to be substantially a finding of assets to the amount of the demand. So in *Easton* v. *Worthington*, (5 *Serg. & Rawle*, 130,) it was held, that where in replevin the goods are delivered to the plaintiff, and the defendant pleads property and it is found for him, the verdict ought not to be for damages for the value, but a general finding for the defendant and damages for the detention, on which there is judgment *pro retorno habendo* and for the damages: and if there be a general verdict in such case, finding the value in damages and also interest, the Court on error brought will reverse the judgment entered, and give a correct judgment according to the substance of the finding of the jury. The same doctrine is recognised in *Huston* v. *Wilson*, (3 *Watts*, 287.)

Judgment affirmed.